IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MELISSA McLAUGHLIN,                    )
                                       )
                Plaintiff,             )
                                       )
                                       )  Case No. CIV-19-297-JFH-KEW
                                       )
COMMISSIONER OF THE SOCIAL             )
SECURITY ADMINISTRATION,               )
                                       )
                Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Melissa McLaughlin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]     Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 37 years old at the time of the ALJ's decision. She has a marginal education. She worked in the past as a fast food worker and painter. She alleges an inability to work beginning on May 1, 2015, due to limitations resulting from bipolar disorder, depression, allergies, and a learning disability.

### Procedural History

On July 12, 2017, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On

October 16, 2018, ALJ Doug Gabbard, II, conducted an administrative hearing in McAlester, Oklahoma, at which Claimant testified. On November 21, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 2, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of unskilled work, with additional mental limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because: (1) he was "swayed" to deny the case secondary to medical marijuana use, thereby minimizing the evidence; and (2) he used an undefined term in the RFC that is not properly reviewable.

### Consideration of Claimant's Marijuana Use

In his decision, the ALJ found Claimant suffered from severe impairments of depressive/bipolar, personality, and substance addiction (drugs and alcohol) disorder. (Tr. 19). He determined Claimant could perform a full range of unskilled work that was simple, repetitive, and routine. Claimant's supervision must be

4

simple, direct, concrete, and uncritical and her interpersonal contact with supervisors and coworkers must be identical to the work performed. As an example, the ALJ listed assembly work. Claimant would do best in a work setting where she could frequently work alone and must not be required to work at a fast-paced production line speed. Claimant should only have occasional workplace changes, must have normal, regular work breaks, and she could have no contact with the general public. (Tr. 21).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of cleaner II and industrial cleaner, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 25-26). As a result, the ALJ concluded Claimant was not under a disability from May 1, 2015, through the date of the decision. (Tr. 26).

Claimant asserts that the ALJ's reliance on her marijuana use for the statement that "[w]hile she has consistently taken her psychotropic medications with good results, the continued use of marijuana has been evidence of noncompliance with treatment[,]" was not a proper reason for finding her subjective complaints were unsupported by the record. *See* Plaintiff's Brief in Chief, pp. 5-6 (Docket Entry # 13).

When considering Claimant's testimony regarding her symptoms with the record evidence, one of the reasons provided by the ALJ

for finding Claimant's subjective statements were not entirely consistent with the medical evidence and other evidence in the record was that Claimant's marijuana use was evidence of her noncompliance with treatment. (Tr. 24). Defendant has agreed that based on the evidence of record, this reason given by the ALJ was not supported by the evidence, as Claimant was compliant with treatment.

Claimant's noncompliance with treatment, however, was not the only reason given by the ALJ for finding Claimant's subjective statements were unsupported by the medical and other evidence in the record. The ALJ relied on other factors, including that (1) although Claimant has sought treatment for years, her treatment notes do not suggest that her mental conditions have been "major disabling problems" (with examples provided by the ALJ) (Tr. 22), (2) Claimant took medications and did well on them, *e.g.*, she was able to do some contract work as a house painter in 2016 and 2017 (Tr. 22), and (3) her daily activities of caring for her child, herself, four nieces, and animals, and numerous other activities (Tr. 23-24). Claimant does not argue that these additional reasons provided by the ALJ are in error. Although the ALJ erred in relying on Claimant's noncompliance with treatment in his evaluation of Claimant's symptoms and complaints, "we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." *Branum v. Barnhart*, 385 F.3d 1268, 1274

(10th Cir. 2004); *see also Pickup v. Colvin*, 606 Fed. Appx. 430, 432-34 (10th Cir. 2015) (relying on *Branum* and finding the ALJ's credibility determination was supported by substantial evidence even though two of the ALJ's findings that the claimant's treatment was essentially routine and/or conservative in nature and that her termination was unrelated to her impairment were not supported by the record).

Moreover, Claimant's argument that the ALJ failed to follow the proper analysis for noncompliance with treatment is also without merit. As noted by Defendant, the ALJ did not find Claimant was disabled but unreasonably failed to comply with treatment that would have allowed her to return to work. *See* 20 C.F.R. §§ 404.1530, 416.930. The ALJ, although wrongly, relied on Claimant's noncompliance with treatment as a factor in evaluating Claimant's symptoms. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (discussing the difference between an analysis under 20 C.F.R. § 404.1530 and an ALJ's reliance on whether a Claimant followed prescribed treatment for purposes of an evaluation of credibility).

Claimant next contends her legal use of marijuana caused "a wholesale minimization of [her] disability case[,]" and "chilled her Due Process Rights." <u>Plaintiff's Brief in Chief</u>, pp. 4, 6-7. At the hearing, after Claimant testified that she had a medical marijuana card in Arizona for her chronic pain, the ALJ asked

Claimant about her allergies, questioning her about whether it "would be terrible for [her] allergies?" Claimant responded there were several ways of using marijuana. The ALJ moved on and then asked Claimant what medications she took for her allergies. (Tr. 46). The only other mention of her marijuana use at the administrative hearing was by her own representative, who asked her if her doctors knew about her marijuana use. Claimant responded they did know and had cautioned her to be careful until she had a medical marijuana card in Oklahoma. (Tr. 51).

The ALJ also mentioned Claimant's marijuana use in the decision. He noted Claimant had cut back on her alcohol use, but she "continued to smoke marijuana with no intention of quitting (Exhibits 4F/21 and 6F/4)." He noted she was trying to get pregnant. (Tr. 23). In progress notes from Carl Albert Community Mental Health Center, the ALJ mentioned that while Claimant continued to complain of severe anxiety, her depression was less and "[t]reatment notes and laboratory studies continued to show that [Claimant] was also using marijuana." (Tr. 23). He further mentioned that Claimant "uses marijuana for pain and that her mental health doctors know this, she has stated several times that she has used marijuana since childhood and she has no intention to quit." He then noted her continued marijuana use as evidence of noncompliance with treatment. (Tr. 24).

An agency hearing to determine eligibility for social security benefits is subject to the protections of procedural due process. *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983). Due process requires that a claimant receive a "full and fair" hearing. *Bush v. Apfel*, 34 F. Supp. 2d 1290, 1298 (N.D. Okla. 1999), citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). There is a presumption that the ALJ is unbiased. *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001), citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). Claimant bears the burden of "producing sufficient evidence to overcome this presumption." *Perkins v. Astrue*, 648 F.3d 892, 902-03 (8th Cir. 2011). There is only a showing of bias when an ALJ "displayed a deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

As discussed herein, although the ALJ erred in relying on Claimant's marijuana use when determining that Claimant had failed to comply with treatment, the ALJ's limited questioning of Claimant about her marijuana use at the administrative hearing and the references to marijuana use in the decision, do not meet the burden of showing the ALJ was biased against Claimant and deprived her of due process.

**RFC Assessment**

Claimant also argues that the ALJ used an undefined term in the RFC that is nonreviewable. Specifically, she asserts the ALJ's use of the term "uncritical" corrupted the RFC and the hypothetical question to the VE and is more of an accommodation than a functional limitation. As part of this argument, Claimant contends the ALJ failed to consider medical evidence from a psychological evaluation she underwent in 1998, which she contends showed that regardless of whether she was criticized, Claimant had problems getting along with others and with authority figures.

The ALJ provided the VE with a hypothetical for an individual that could perform a full range of unskilled work, described as simple, routine, and repetitive. He indicated that "supervision should be simple, direct, concrete and uncritical." Personal contact with supervisors and co-workers must be incidental to the work performed, such as assembly work. The best work setting would be one where Claimant could work alone in a work environment free of fast-paced production speeds. There should only be occasional workplace changes, normal, regular work breaks, and no contact with the general public. (Tr. 54-55). In response to the hypothetical, and without questioning the ALJ's hypothetical in any way, the VE testified Claimant could not perform her past relevant work, but she could perform the jobs of cleaner II and industrial cleaner. (Tr. 55). The VE testified her testimony was

10

consistent with the *Dictionary of Occupational Titles*, other than when she stated differently. (Tr. 56).

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

There is no error in the ALJ's RFC determination as it relates to the hypothetical questions posed to the VE. Although the ALJ included the term "uncritical" in the hypothetical question to the VE, the VE responded to the hypothetical indicating there were jobs in the national economy that Claimant could perform with those limitations. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

Regarding the 1998 psychological evaluation, although the ALJ did not reference it in detail, he did cite it as an exhibit

when discussing that Claimant had a mild limitation in understanding, remembering, or applying information and noting she graduated from high school and had a history of special education classes and learning disabilities. (Tr. 19, 1008-16). There is no error by the ALJ for not discussing the evaluation in more detail. The 1998 evaluation is from well before Claimant's alleged onset of disability date of May 15, 2015. *See generally, Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ is not required to discuss every piece of evidence in the record). Moreover, many of the psychologist's findings are vocational recommendations and not functional limitations, and in many cases, the RFC accounts for them. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When an ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and

Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of March, 2021.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE